1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   JAIME BELTRAN,                          No.  2:17-cv-1520 TLN AC P

12              Plaintiff,

13        v.                                 ORDER AND FINDINGS &
                                             RECOMMENDATIONS
14   ERIC R. BAKER et al.,

15              Defendants.

16

17        Plaintiff is a state prisoner proceeding through counsel with a civil rights action pursuant

18   to 42 U.S.C. § 1983.

19   I.       Procedural History

20        Plaintiff initiated this civil rights action against defendants on July 13, 2017.[1]  ECF No. 1.

21   Currently before the court is defendants' motion for summary judgment for failure to exhaust

22   administrative remedies, ECF No. 46, which plaintiff opposes, ECF No. 52.  Defendants' reply in

23   support of their summary judgment motion was accompanied by a motion to strike portions of

24   plaintiff's declaration, ECF No. 58-2, and a request for judicial notice, ECF No. 58-3.  Plaintiff

25   has moved to strike defendants' reply to plaintiff's response to the statement of facts, request for

26   ───────────────────────

27   [1]  Since plaintiff was proceeding pro se at the time he filed the complaint, this date reflects
     application of the prisoner mailbox rule.  See Houston v. Lack, 487 U.S. 266, 276 (1988)
28   (establishing rule that a prisoner's court document is deemed filed on the date the prisoner
     delivered the document to prison officials for mailing).

                                              1

1  judicial notice, all declarations submitted with the reply, and all portions of the reply that rely on

2  the documents plaintiff seeks to strike.  ECF No. 59.  Both motions to strike are opposed.  ECF

3  Nos. 60, 61.

4    II.    Plaintiff's Allegations

5      Plaintiff alleges that on November 4, 2015, he was a victim of attempted murder by two

6  inmates who stabbed him twenty-five times, causing serious injuries.  ECF No. 1 at 5-6, ¶ 9.  He

7  alleges defendants were assigned to the area and deliberately failed to intervene or stop the assault

8  while it was occurring, and did not respond at all until four minutes after it ended.  Id. at 4-7, ¶¶ 5,

9  12-13.  Plaintiff required extensive medical care and suffered a series of serious medical

10  complications from this assault and now proceeds on an Eighth Amendment failure to protect

11  claim against defendants based on their failure to intervene.[2]  Id. at 9-12, ¶¶ 20-26, 28.

12    III.    Motion for Summary Judgment

13      A.    Defendants' Arguments

14      Defendants move for summary judgment on the ground that plaintiff did not exhaust his

15  administrative remedies before filing suit.  ECF No. 46-1.  They argue that plaintiff's third-level

16  appeal was cancelled as untimely, and plaintiff failed to challenge its cancellation.  Id. at 6-7.

17      B.    Plaintiff's Response

18      Plaintiff opposes the motion and argues that he exhausted his available administrative

19  remedies when his appeal was referred to the Office of Internal Affairs (OIA) for an investigation

20  at the second level of review, thus leaving no further remedies available.  ECF No. 52 at 8-15.  In

21  the alternative, he asserts that the California Department of Corrections and Rehabilitation

22  (CDCR) improperly cancelled his third-level appeal and thwarted him through misrepresentation.

23  Id. at 15-17.

24      C.    Defendants' Reply

25      In reply to the opposition, defendants argue that even though the appeal was referred to

26  the OIA, plaintiff was required to pursue his appeal through the third level of review because

27

28  [2]  Plaintiff voluntarily dismissed his claim that defendants failed to protect him by preventing the assault.  ECF No. 14.

2

1    there were administrative remedies available at the third level.  ECF No. 58 at 7-13.  They further

2    argue that plaintiff's appeal was not thwarted through improper cancellation or misrepresentation.

3    Id. at 13-21.

4         IV.    Legal Standards for Summary Judgment

5         Summary judgment is appropriate when the moving party "shows that there is no genuine

6    dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

7    Civ. P. 56(a).  Under summary judgment practice, "[t]he moving party initially bears the burden

8    of proving the absence of a genuine issue of material fact."  In re Oracle Corp. Sec. Litig., 627

9    F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The

10   moving party may accomplish this by "citing to particular parts of materials in the record,

11   including depositions, documents, electronically stored information, affidavits or declarations,

12   stipulations (including those made for purposes of the motion only), admissions, interrogatory

13   answers, or other materials" or by showing that such materials "do not establish the absence or

14   presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to

15   support the fact." Fed. R. Civ. P. 56(c)(1).

16        "Where the non-moving party bears the burden of proof at trial, the moving party need

17   only prove that there is an absence of evidence to support the non-moving party's case." Oracle

18   Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B).

19   Indeed, summary judgment should be entered, "after adequate time for discovery and upon

20   motion, against a party who fails to make a showing sufficient to establish the existence of an

21   element essential to that party's case, and on which that party will bear the burden of proof at

22   trial." Celotex, 477 U.S. at 322.  "[A] complete failure of proof concerning an essential element

23   of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.  In such

24   a circumstance, summary judgment should "be granted so long as whatever is before the district

25   court demonstrates that the standard for the entry of summary judgment, as set forth in Rule

26   56(c), is satisfied." Id.

27        If the moving party meets its initial responsibility, the burden then shifts to the opposing

28   party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec.

3

1    Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  In attempting to establish the

2    existence of this factual dispute, the opposing party may not rely upon the allegations or denials

3    of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or

4    admissible discovery material, in support of its contention that the dispute exists.  See Fed. R.

5    Civ. P. 56(c).  The opposing party must demonstrate that the fact in contention is material, i.e., a

6    fact "that might affect the outcome of the suit under the governing law," and that the dispute is

7    genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving

8    party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

9          In the endeavor to establish the existence of a factual dispute, the opposing party need not

10   establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

11   dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

12   trial."  T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987)

13   (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968).  Thus, the

14   "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see

15   whether there is a genuine need for trial."  Matsushita, 475 U.S. at 587 (citation and internal

16   quotation marks omitted).

17         "In evaluating the evidence to determine whether there is a genuine issue of fact, [the

18   court] draw[s] all inferences supported by the evidence in favor of the non-moving party."  Walls

19   v. Cent. Contra Costa Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted).  It is the

20   opposing party's obligation to produce a factual predicate from which the inference may be

21   drawn.  See Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to

22   demonstrate a genuine issue, the opposing party "must do more than simply show that there is

23   some metaphysical doubt as to the material facts."  Matsushita, 475 U.S. at 586 (citations

24   omitted).  "Where the record taken as a whole could not lead a rational trier of fact to find for the

25   non-moving party, there is no 'genuine issue for trial.'"  Id. at 587 (quoting First Nat'l Bank, 391

26   U.S. at 289).

27   ////

28   ////

4

1    V.    Legal Standards for Exhaustion

2          A.    Exhaustion Under the Prison Litigation Reform Act

3          Because plaintiff is a prisoner suing over the conditions of his confinement, his claims are

4    subject to the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a).  Under the PLRA,

5    "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or

6    any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until

7    such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a); Porter v.

8    Nussle, 534 U.S. 516, 520 (2002) ("§ 1997e(a)'s exhaustion requirement applies to all prisoners

9    seeking redress for prison circumstances or occurrences").  "[T]hat language is 'mandatory': An

10   inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent

11   exhaustion of available administrative remedies."  Ross v. Blake, 578 U.S. 632, 638 (2016)

12   (quoting Woodford v. Ngo, 548 U.S. 81, 85 (2006)).

13         Failure to exhaust is "an affirmative defense the defendant must plead and prove."  Jones

14   v. Bock, 549 U.S. 199, 204, 216 (2007).  "[T]he defendant's burden is to prove that there was an

15   available administrative remedy, and that the prisoner did not exhaust that available remedy."

16   Albino v. Baca, 747 F.3d 1162, 1172 (9th Cir. 2014) (en banc) (citing Hilao v. Estate of Marcos,

17   103 F.3d 767, 778 n.5 (9th Cir. 1996)).  "[T]here can be no 'absence of exhaustion' unless *some*

18   relief remains 'available.'"  Brown v. Valoff, 422 F.3d 926, 936 (9th Cir. 2005) (emphasis in

19   original).  Therefore, the defendant must produce evidence showing that a remedy is available "as

20   a practical matter," that is, "it must be capable of use; at hand."  Albino, 747 F.3d at 1171

21   (citations and internal quotations marks omitted).  "[A]side from [the unavailability] exception,

22   the PLRA's text suggests no limits on an inmate's obligation to exhaust—irrespective of any

23   'special circumstances.'"  Ross, 578 U.S. at 639.  "[M]andatory exhaustion statutes like the

24   PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion."  Id. (citation

25   omitted).

26         For exhaustion to be "proper," a prisoner must comply with the prison's procedural rules,

27   including deadlines, as a precondition to bringing suit in federal court.  Woodford, 548 U.S. at 90

28   ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural

5

1    rules.").  "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of

2    proper exhaustion."  Jones, 549 U.S. at 218; see also Marella v. Terhune, 568 F.3d 1024, 1027

3    (9th Cir. 2009) ("The California prison system's requirements 'define the boundaries of proper

4    exhaustion'" (quoting Jones, 549 U.S. at 218)).

5         As long as some potential remedy remained available through the administrative appeals

6    process, even if it was not the remedy he sought, plaintiff was required to exhaust his remedies.

7    Booth v. Churner, 532 U.S. 731, 741 & n.6 (2001) ("Congress has provided in § 1997e(a) that an

8    inmate must exhaust irrespective of the forms of relief sought and offered through administrative

9    avenues.").  The Supreme Court has identified "three kinds of circumstances in which an

10   administrative remedy, although officially on the books, is not capable of use to obtain relief."

11   Ross, 578 U.S. at 643.  "First, . . . an administrative procedure is unavailable when (despite what

12   regulations or guidance materials may promise) it operates as a simple dead end—with officers

13   unable or consistently unwilling to provide any relief to aggrieved inmates."  Id. (citing Booth,

14   532 U.S. at 736).  "Next, an administrative scheme might be so opaque that it becomes,

15   practically speaking, incapable of use."  Id.  Finally, administrative remedies are unavailable

16   "when prison administrators thwart inmates from taking advantage of a grievance process through

17   machination, misrepresentation, or intimidation."  Id. at 644.

18        When the district court concludes that the prisoner has not exhausted administrative

19   remedies on a claim, "the proper remedy is dismissal of the claim without prejudice."  Wyatt v.

20   Terhune, 315 F.3d 1108, 1120 (9th Cir. 2003) (citation omitted), overruled on other grounds by

21   Albino, 747 F.3d at 1168.

22        B.    California Regulations Governing Exhaustion of Administrative Remedies

23        Exhaustion requires that the prisoner complete the administrative review process in

24   accordance with all applicable procedural rules.  Woodford, 548 U.S. at 90.  This review process

25   is set forth in the California Code of Regulations.  In 2016, those regulations allowed prisoners to

26   "appeal any policy, decision, action, condition, or omission by the department or its staff that the

27   inmate or parolee can demonstrate as having a material adverse effect upon his or her health,

28   ////

6

1     safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a) (2015).[3]

2          At the time plaintiff was proceeding through the appeals process, it was comprised of

3     three levels of review for most types of appeals. Id. § 3084.7.[4] "The second level [was] for

4     review of appeals denied or not otherwise resolved to the appellant's satisfaction at the first level,

5     or for which the first level [was] otherwise waived by [the] regulations." Id. § 3084.7(b).

6     Relevant to the issues here, the third level was "for review of appeals not resolved at second

7     level" or appeals of "a third level cancellation decision or action." Id. § 3084.7(c). An inmate

8     was required to "submit the appeal within 30 calendar days of: (1) The occurrence of the event or

9     decision being appealed, or; (2) Upon first having knowledge of the action or decision being

10    appealed, or; (3) Upon receiving an unsatisfactory departmental response to an appeal filed." Id.

11    § 3084.8(b).

12         If an appeal described staff misconduct, a determination would be made whether it should

13    be processed as a routine appeal, processed as a staff complaint appeal inquiry, or referred to

14    Internal Affairs for investigation or inquiry. Id. § 3084.5(b)(4). In the event the OIA declined to

15    investigate, the allegations were subject to a confidential inquiry. Id. § 3084.9(i)(3). The

16    response to a staff complaint informed the inmate of either: (1) the referral for investigation,

17    status of the investigation, and outcome of the investigation at its conclusion; or (2) the decision

18    to conduct a confidential inquiry and whether the staff in question was found to have violated

19    departmental policy. Id. § 3084.9(i)(4).

20         Each prison was required to have an "appeals coordinator" whose job was to "screen all

21    appeals prior to acceptance and assignment for review." Id. § 3084.5(b). The appeals coordinator

22    could refuse to accept an appeal, whereupon "the inmate or parolee [would] be notified of the

23    specific reason(s) for the rejection or cancellation of the appeal." Id. §§ 3084.5(b)(3), 3084.6(a).

24    An appeal could be cancelled if "[t]ime limits for submitting the appeal [were] exceeded even

25    ────────────────────
      [3] Unless otherwise noted, all citations to Title 15 of the California Code of Regulations are to the
26    2015 version, which was in effect at the time plaintiff was pursuing his administrative remedies.
      Significant amendments, which largely went into effect in late 2016, followed plaintiff's appeal.
27    [4] Section 3084.7 was subject to emergency amendment on June 2, 2016. However, the
      subsection subject to amendment did not apply to plaintiff's appeal and the regulation otherwise
28    remained identical to the 2015 version.

1  though the inmate . . . had the opportunity to submit within the prescribed time constraints."  Id.

2  § 3084.6(c)(4).  Once cancelled, an appeal was not to be accepted unless it was determined that

3  the cancellation was in error or new information made the appeal eligible for further review.  Id.

4  § 3084.6(a)(3), (e).  However, the cancellation of the appeal could be separately appealed.  Id.

5  § 3084.6(e).  A cancellation decision did not exhaust administrative remedies.  Id. § 3084.1(b).

6    VI.    Evidentiary Issues

7        A.    Defendants' Motion to Strike

8        Defendants move to strike paragraph three of plaintiff's declaration on various grounds,

9  ECF No. 58-2, which plaintiff opposes, ECF No. 60.  Paragraph three states "I did not receive the

10  second level response to Appeal # SAC-C-16-00599 until about February 26, 2016 because the

11  response was mailed on February 19 from a different institution than where I reside and because

12  of delays in the mailroom at the institution where I reside."  ECF No. 52-3 at 1.

13        Because this evidence relates to the timeliness of plaintiff's third-level appeal—and, as

14  discussed below, this issue is moot, see infra Section VIII—it is unnecessary for the court to

15  address the sufficiency of the evidence.  Accordingly, defendants' motion to strike paragraph

16  three of plaintiff's declaration will be denied.

17        B.    Request for Judicial Notice

18        Defendants request the court take judicial notice of plaintiff's housing assignment history,

19  the distance between various institutions, and the versions of Title 15 and the CDCR Department

20  Operations Manual that were in effect at the times relevant to exhaustion.  ECF No. 58-3.

21  Plaintiff opposes the request on the ground that it seeks to introduce new facts.  ECF No. 59.

22        "The court may judicially notice a fact that is not subject to reasonable dispute because it:

23  (1) is generally known . . . or (2) can be accurately and readily determined from sources whose

24  accuracy cannot be reasonably questioned."  Fed. R. Evid. 201(b).  Because plaintiff's housing

25  assignment history and the distance between various institutions relate to the timeliness of

26  plaintiff's third-level appeal—and, as discussed below, this issue is moot, see infra Section

27  VIII—it is unnecessary for the court to take judicial notice of these facts.  With respect to the

28  applicable regulations, they constitute legal authority and judicial notice is therefore not

1   necessary.  See Cent. Delta Water Agency v. U.S. Fish & Wildlife Serv., 653 F. Supp. 2d 1066,

2   1079 (E.D. Cal. 2009) (judicial notice of statutory legal authorities unnecessary).  Finally,

3   because the historical CDCR Department Operations Manual is a matter of public record and its

4   accuracy is not subject to reasonable dispute, the court takes judicial notice of only those sections

5   actually cited by defendants in their reply.  See Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442

6   F.3d 741, 746 n.6 (9th Cir. 2006) (court may take notice of matters of public record).

7                    C.    Plaintiff's Motion to Strike

8          Plaintiff moves to strike defendants' reply to plaintiff's response to the statement of facts,

9   request for judicial notice, all declarations submitted with the reply, and the portions of the reply

10  that rely on those documents, ECF No. 59, and defendants oppose the motion, ECF No. 61.

11         Plaintiff seeks to strike defendants' separate reply to his response to the statement of facts

12  on the ground that it is impermissible because the Local Rules do not provide for a separate reply

13  in support of the statement of facts.  ECF No. 59 at 3.  The motion will be denied on this ground

14  because defendants were granted leave to file their reply to plaintiff's response to their statement

15  of facts as a separate document.  ECF No. 57.  The motion will also be denied as to the request

16  for judicial notice, which has been addressed above.  See supra Section VI.B.

17         With respect to the remaining portions of the reply, plaintiff argues that the attachments

18  and relevant sections of the reply should be struck because they introduce new facts that were not

19  included in the summary-judgment motion, thereby depriving him of an opportunity to respond.

20  ECF No. 59.  Defendants argue the evidence is not new because it was submitted in response to

21  evidence presented in the opposition.  ECF No. 61 at 2-4.

22         The Ninth Circuit has held that "[w]here new evidence is presented in a reply to a motion

23  for summary judgment, the district court should not consider the new evidence without giving the

24  [non-]movant an opportunity to respond."  Provenz v. Miller, 102 F.3d 1478, 1483 (9th Cir.

25  1996) (alteration in original) (quoting Black v. TIC Inv. Corp., 900 F.2d 112, 116 (7th Cir.

26  1990)).  To the extent plaintiff moves to strike new evidence regarding the timeliness of his third-

27  level appeal, as discussed below, the timeliness issue is moot, see supra Section VIII, and it is

28  therefore unnecessary for the court to consider the additional evidence presented by defendants in

1    their reply.  With regard to the new facts related to the availability of additional relief on third-

2    level review (TLR), plaintiff was given an opportunity to respond to the evidence during oral

3    argument.  Accordingly, plaintiff's motion to strike will be denied.

4         VII.    Undisputed Material Facts

5              The facts as they relate to exhaustion are largely undisputed, but the parties disagree on a

6    few key distinctions.  The parties agree that plaintiff pursued an appeal related to the claims in the

7    complaint, and they agree on most of the timeline for that appeal as set forth below.  The parties

8    disagree on the timeliness of the third-level appeal and whether additional remedies remained

9    available after the appeal was referred to the OIA at the second level.  Other facts have been

10   obtained from the documentation, of which the parties dispute some details, as discussed below.

11             At all times relevant to the complaint, plaintiff was a prisoner in custody of the CDCR.

12   ECF No. 1 ¶¶ 1-2.  On February 9, 2016, the CSP-Sacramento Appeals Office received plaintiff's

13   inmate appeal regarding his claim against defendants.  Defendants' Statement of Undisputed

14   Facts ("DSUF") (ECF No. 46-2) ¶¶ 10-11; Response to DSUF (ECF No. 52-1) ¶¶ 10-11.  The

15   appeal requested as follows: (1) the assignment of an unbiased party to investigate plaintiff's

16   allegations; (2) freedom from retaliation; (3) compensation for damages; and (4) medical

17   accommodation.  DSUF ¶ 12; Response to DSUF ¶ 12.  This appeal was designated as a "staff

18   complaint."  ECF No. 46-3 at 17-18.

19             Plaintiff's staff complaint bypassed first-level review.  DSUF ¶ 13; Response to DSUF

20   ¶ 13.  The second-level review (SLR) response partially granted plaintiff's appeal and referred the

21   matter to the OIA "for follow-up and possible investigation."[5]  DSUF ¶ 14; ECF No. 46-3 at 17.

22

23   [5]  Plaintiff does not dispute that the SLR response was partially granted but instead disputes that it
     was sent for "possible" investigation.  Response to DSUF ¶ 14.  He argues that in the
24   "Determination of Issue" section of the response, it states that the "appeal was referred for an
     investigation" such that there was no inclusion of the word "possible."  Id.  However, the
25   response states in two places that it was referred for possible investigation and explains that the
     OIA may choose to not investigate and instead send it back to the institution for a confidential
26   inquiry.  ECF No. 46-3 at 17.  Accordingly, it appears that at the time the response was issued it
     was referred for possible investigation by the OIA.  Regardless, the material fact, which is not in
27   dispute, is that the appeal was referred to the OIA, not whether the OIA was required to or did in
     fact conduct an investigation.
28

1   The SLR response also stated that

2           [a]lthough you have the right to submit a staff complaint, a request
        for administrative action regarding staff or the placement of
3       documentation in a staff member's personnel file is beyond the scope
        of the staff complaint process.  Allegations of staff misconduct do
4       not limit or restrict the availability of further relief via the inmate
        appeals process.  If you wish to appeal the decision, you must submit
5       your staff complaint appeal through all levels of appeal review up to,
        and including, the Secretary's Level of Review.  Once a decision has
6       been rendered at the Third Level, your administrative remedies will
        be considered exhausted.
7

8   ECF No. 46-3 at 18.  The appeal indicates that it was "mailed/delivered" to plaintiff on February

9   19, 2016.[6]  Id. at 14.

10          Plaintiff submitted his appeal for third-level review (TLR) on March 22, 2016.  DSUF

11  ¶ 19; Response to DSUF ¶ 19.  His third-level appeal stated the following: "I am dissati[s]fied

12  with the response at the Second Level Review – and reiterate all my claims and actions requests

13  herein.  I expect, upon consideration, that the reviewers will do what is necessary and just and

14  within their authority."  ECF No. 46-4 at 9; DSUF ¶ 20; Response to DSUF ¶ 20.  On April 27,

15  2016, a response to plaintiff's staff complaint was issued that notified him of the outcome and

16  stated as follows:

17          Our review indicates that a violation of California Department of
        Corrections (CDCR) policy did occur.  As a result of the policy
18      violation, appropriate action was taken.  California law prevents
        disclosure of additional information related to this finding . . . .
19

20      **This response does not limit or restrict the availability of further
        relief via the inmate appeals process.**  If you have not already done
21      so, and you wish to further appeal the decision; you must submit your
        staff complaint appeal through all levels of appeal review up to, and
22      including, the Secretary's Level of Review.

        With the rendering of a decision at the Third Level of Review your
23      administrative remedies will be considered exhausted.

24  ECF No. 46-3 at 19 (emphasis in original).

25  ////

26  ////

27  _____

28  [6]  The parties dispute whether the response was received by plaintiff on February 19, 2016, or
    mailed to plaintiff on that date and received on a later date.  DSUF ¶ 18; Response to DSUF ¶ 18.

11

On July 5, 2016, plaintiff's third-level appeal was cancelled as untimely.[7]  DSUF ¶ 21; Response to DSUF ¶ 21.  Plaintiff was required to submit the third-level appeal within thirty calendar days of receiving the SLR response.  DSUF ¶ 21; Response to DSUF ¶ 21.  Plaintiff was informed that he could appeal the cancellation of his grievance by submitting a separate appeal within thirty calendar days from the date of the cancellation.  DSUF ¶ 22; Response to DSUF ¶ 22.  The cancellation notice included an advisement that "once an appeal has been cancelled, that appeal may not be resubmitted.  However, a separate appeal can be filed on the cancellation decision. . . .  The original appeal may only be resubmitted if the appeal on the cancellation is granted."  ECF No. 46-4 at 7.  Plaintiff did not appeal the cancellation.  DSUF ¶ 23; Response to DSUF ¶ 23.

VIII.   <u>Discussion</u>

It is undisputed that at the time plaintiff was pursuing his appeal, the CDCR's administrative remedy process generally required inmates to proceed through three levels of review to exhaust an inmate appeal and that plaintiff attempted to proceed to the third level but was unsuccessful.[8]  Defendants have thus satisfied their initial burden of demonstrating a failure to complete the state's exhaustion process.  <u>See</u> <u>Reyes v. Smith</u>, 810 F.3d 654, 657 (9th Cir. 2016) (a California inmate exhausts administrative remedies by obtaining a decision at each of the three available levels of review).  Accordingly, the burden shifts to plaintiff to "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him."  <u>Albino</u>, 747 F.3d at 1172.

---

[7]  Though plaintiff disputes whether his appeal was in fact untimely, he does not dispute that it was cancelled on that ground or that he had thirty calendar days from his receipt of the SLR response to submit his appeal.  DSUF ¶ 21 is therefore deemed undisputed.

[8]  During oral argument, plaintiff argued that when his staff complaint was referred to the OIA at SLR, he expected to be interviewed as part of the investigation.  He then filed his TLR appeal after it began to appear he would not be interviewed.  It appears that plaintiff may have been attempting to argue that he was satisfied by the SLR response and his TLR appeal was merely a "reminder grievance" under <u>Harvey v. Jordan</u>.  <u>See</u> 605 F.3d 681, 685 (9th Cir. 2010).  However, the court will not address this argument as it has not been fully briefed.

12

An available remedy must be "capable of use; at hand." Id. at 1171 (quoting Brown v. Croak, 312 F.3d 109, 113 (3d Cir. 2002)).  "[A]n inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of,'" Ross, 578 U.S. at 642 (quoting Booth, 532 U.S. at 738), and a majority of courts within this Circuit have held that a prisoner's administrative remedies for pursuing a staff complaint appeal are exhausted when an OIA investigation is ordered because no further remedies remain available, see, e.g., Walker v. Whitten, No. 2:09-cv-0642 WBS GGH P, 2011 WL 1466882, at *3-5, 2011 U.S. Dist. LEXIS 41759, at *9-16 (E.D. Cal. Apr. 18, 2011) (finding that " a number of courts have found that an appeal of a complaint categorized as a 'staff complaint' was exhausted once an investigation was ordered" and holding defendants did not meet burden of showing additional relief remained available) (collecting cases)).

Here, plaintiff contends that referral of his staff complaint to the OIA exhausted his administrative remedies because after referral for investigation there were no further administrative remedies available.  ECF No. 52 at 8-14.  Defendants argue that plaintiff was required to exhaust his appeal through TLR because he was expressly informed of this requirement in the SLR decision and further remedies remained available.  ECF No. 46-1 at 6; ECF No. 58 at 8-13.  However, defendants have not identified any concrete, additional relief that would have been available to plaintiff on a TLR of his staff complaint.  Without the availability of such relief, defendants' theory of non-exhaustion cannot prevail.

Defendants argue that timely TLR would have allowed the Office of Appeals to issue an order modifying the SLR response to inform plaintiff of the OIA investigation status, or address plaintiff's requests for compensation and medical accommodation.  ECF No. 58 at 10-12.  This argument fails.  A status update regarding the investigation simply does not constitute additional relief.  And plaintiff was independently entitled to notification of the results of the investigation referral.  See Cal. Code Regs. tit. 15, § 3084.9(i)(4) (inmate is to be notified of outcome at conclusion of an investigation or confidential inquiry); ECF No. 46-3 at 17 (staff complaint response notifying plaintiff he would be notified of outcome).  Furthermore, defendants conceded at oral argument that plaintiff could not have received medical accommodation at TLR because it

13

1   was not a healthcare appeal, and it is well established that inmates cannot receive compensation

2   through the administrative appeals process, see, e.g., Brown, 422 F.3d at 931 (CDCR appeal

3   response stated that "[i]t is beyond the scope of the appeals process to grant you monetary

4   compensation.); Canister v. Beck, No. 2:16-cv-3053 JAM DMC P, 2019 WL 250534, at *2, 2019

5   U.S. Dist. LEXIS 8699, at *6 (E.D. Cal. Jan. 17, 2019) (response to CDCR inmate's 2016 appeal

6   stated "[y]our request for monetary compensation is beyond the scope of the appeals process and

7   will not be addressed in this appeal response.").  A statement that unavailable relief is

8   unavailable, like a status update on an investigation referral that has already been made, is not

9   additional "relief" in any sense of the word.

10      This case is analogous to Dixon v. Oleachea in which the court found that "plaintiff

11   exhausted his available administrative remedies . . . when he was informed by the SLR decision

12   that the claim was being investigated by the OIA."  No. 2:15-cv-2372 KJM AC P, 2020 WL

13   5604276, at *13, 2020 U.S. Dist. LEXIS 171553, at *32 (E.D. Cal. Sept. 18, 2020), adopted in

14   full, 2021 WL 2941164, 2021 U.S. Dist. LEXIS 130585 (E.D. Cal. July 13, 2021).  In Dixon, as

15   here, plaintiff's staff complaint was referred to the OIA, and plaintiff received a notice that he had

16   to appeal the decision through all levels to exhaust his administrative remedies.  Id., at *11, 2020

17   U.S. Dist. LEXIS 171553, at *27.  However, defendants failed to identify any available relief that

18   was available at TLR and the court therefore found that plaintiff had exhausted all available

19   administrative remedies.  Id., at *11-13, 2020 U.S. Dist. LEXIS 171553, at *27-32.  Here, as in

20   Dixon, the undersigned finds that defendants have not shown additional remedies were available

21   and that "[i]t is insufficient for defendants to rely on language informing plaintiff that he must

22   pursue further administrative review if no further relief is available."  Dixon, 2020 WL 5604276,

23   at *11, 2020 U.S. Dist. LEXIS 171553, at *29 (citation omitted).

24      For all these reasons, the court finds that plaintiff has met his burden of demonstrating that

25   "the existing and generally available administrative remedies [were] effectively unavailable to

26   him."  Albino, 747 F.3d at 1172.  Defendants bear the ultimate burden of proving that a prisoner

27   failed to exhaust his administrative remedies, id., and their failure to identify what further relief

28   was available to plaintiff at the third level defeats their non-exhaustion defense.  "This lack of

1    clarity must be borne by defendants.  It is defendants' burden to show that some practical relief

2    remained available to plaintiff regarding his grievance against them at the third level of review."

3    Cato v. Darst, No. 2:17-cv-1873 TLN EFB P, 2020 WL 2772089, at *10, 2020 U.S. Dist. LEXIS

4    93522, at *27 (E.D. Cal. Mar. 23, 2020) (finding that defendants had "not discharged their burden

5    of showing that plaintiff failed to exhaust *available* remedies" (emphasis in original)), adopted in

6    full, 2020 WL 2770372, 2020 U.S. Dist. LEXIS 93523 (E.D. Cal., May 28, 2020).

7            For all the reasons explained above, the court finds that defendants have failed to show

8    that additional remedies remained at the third level of review, and plaintiff exhausted his

9    available administrative remedies when he was informed by the SLR decision that the claim was

10   being investigated by the OIA.  Because, plaintiff's administrative remedies were exhausted by

11   the SLR decision, any arguments as to the timeliness of plaintiff's third-level appeal and

12   misrepresentation of the time to appeal are moot.

13                                          CONCLUSION

14           Accordingly, IT IS HEREBY ordered that:

15           1.  Defendants' motion to strike, ECF No. 58-2, is DENIED.

16           2.  Defendants' request for judicial notice, ECF No. 58-3, is GRANTED to the extent the

17   court takes judicial notice of the sections of the Department Operations Manual specifically

18   identified in their reply.  The motion is otherwise DENIED.

19           3.  Plaintiff's motion to strike, ECF No. 59, is DENIED.

20           IT IS FURTHER RECOMMENDED that defendants' motion for summary judgment,

21   ECF No. 46, be DENIED.

22           These findings and recommendations are submitted to the United States District Judge

23   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

24   after being served with these findings and recommendations, any party may file written

25   objections with the court and serve a copy on all parties.  Such a document should be captioned

26   "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

27   objections shall be served and filed within fourteen days after service of the objections.  The

28   parties are advised that failure to file objections within the specified time may waive the right to

                                                    15

appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: November12, 2021

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE