UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAIME BELTRAN,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>ERIC R. BAKER, et al.,<br><br>　　　　　Defendants. | No.  2:17-cv-1520 TLN AC P<br><br>ORDER AND FINDINGS & RECOMMENDATIONS |

Plaintiff is a state prisoner proceeding through counsel with a civil rights action pursuant to 42 U.S.C. § 1983.

I.    Procedural History

Plaintiff, a pro se litigant at that time, filed a civil rights complaint in which he alleged that he was assaulted by other inmates and defendants failed to prevent the assault and failed to intervene after the assault began. ECF No. 1. The claim for failing to prevent the assault was not sufficiently pled (ECF No. 10), and plaintiff chose to voluntarily dismiss that claim and proceed on the failure to intervene claim only (ECF No. 14). Defendants Tran, Swett, Baker, Cross, and Smith are represented by separate counsel from defendant Guerra, and both sets of defendants have moved for summary judgment on the merits (ECF Nos. 100, 102), which plaintiff opposes (ECF Nos. 108, 112).

////

II.     Plaintiff's Allegations

Plaintiff alleges that on November 4, 2015, two inmates attempted to murder him by attacking him and stabbing him twenty-five times, causing serious injuries. ECF No. 1 at 5-6, ¶ 9. Tran, Swett, Baker, Cross, and Smith were assigned to the yard where the assault occurred, while Guerra was assigned to the tower overlooking the yard. Id. at 4-5, ¶ 5. All defendants failed to intervene or stop the assault while it was occurring, and did not respond at all until four minutes after it ended. Id. at 6-7, ¶¶ 10-13. Plaintiff required extensive medical care and suffered a series of serious medical complications from the assault. Id. at 9-11, ¶¶ 20-26.

III.    Motions for Summary Judgment

A.      Defendant Guerra's Motion

Guerra moves for summary judgment on the grounds that plaintiff cannot prove that he had the requisite state of mind or that there was an excessive risk of physical harm. ECF No. 100 at 6-8. Alternatively, Guerra argues he is entitled to qualified immunity because he has shown that he was not deliberately indifferent to a substantial risk of serious harm. Id. at 8-9.

Plaintiff opposes the motion and argues that there is an issue of material fact as to whether Guerra was aware of and ignored the attack. ECF No. 108 at 8-12. He also argues that this dispute precludes qualified immunity because if Guerra saw and ignored the attack, the unlawfulness of his conduct was clearly established. Id. at 13.

B.      Defendants Tran, Swett, Baker, Cross, and Smith's Motion

Defendants Tran, Swett, Baker, Cross, and Smith move for summary judgment on the grounds that plaintiff does not have any evidence that they witnessed the attack and thus failed to intervene, that Cross was not assigned to the yard at the time of the attack, and that plaintiff cannot show that he suffered any harm due to delayed medical care because he received medical care within five minutes of the assault. ECF No. 102 at 10-13. They alternatively argue that they are entitled to qualified immunity because there are no cases establishing specific actions to protect inmates from other inmates, such as standing in specific areas or patrolling at specific intervals, and the brief delay in providing medical care was not clearly unconstitutional. Id. at 13-16.

In his response, plaintiff clarifies that he is not pursuing a claim based upon a delay in providing medical care and agrees that Cross should be dismissed. ECF No. 112 at 6 nn.1-2. With regard to Tran, Swett, Baker, and Smith, plaintiff argues that there is a genuine issue of fact as to whether they witnessed the attack and that they are not entitled to qualified immunity because they saw the attack and failed to intervene, which clearly violates the Eighth Amendment. Id. at 12-20.

IV. Legal Standards for Summary Judgment

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under summary judgment practice, "[t]he moving party initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

"Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. In such a circumstance, summary judgment should "be granted so long as whatever is before the district

////

court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, i.e., a fact "that might affect the outcome of the suit under the governing law," and that the dispute is genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968). Thus, the "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita, 475 U.S. at 587 (citation and internal quotation marks omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact, [the court] draw[s] all inferences supported by the evidence in favor of the non-moving party." Walls v. Cent. Contra Costa Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586 (citations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the

non-moving party, there is no 'genuine issue for trial.'" Id. at 587 (quoting First Nat'l Bank, 391 U.S. at 289).

V. Legal Standard for Failure to Protect

Prison officials have an obligation to protect prisoners from injury by other prisoners. Farmer v. Brennan, 511 U.S. 825, 833-34 (1994). The Eighth Amendment is only violated, however, when a defendant acts with a sufficiently culpable state of mind. Wilson v. Seiter, 501 U.S. 294, 297 (1991). Accordingly, to state an Eighth Amendment claim for failure to protect, a plaintiff must plead facts demonstrating that the defendant knew of and disregarded an excessive risk to inmate health or safety. Farmer, 511 U.S. at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. Negligent failure to protect an inmate from harm is not actionable under § 1983; even civil recklessness—failure "to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known"—is insufficient to establish an Eighth Amendment claim. Id. at 835-37.

VI. Undisputed Material Facts

A. The Assault

On November 4, 2015, while confined at California State Prison-Sacramento and housed on Facility C, plaintiff was the victim of an attempted murder by two inmates who were armed with inmate-manufactured weapons. ECF No. 100-2 (Guerra's Undisputed Facts) ¶¶ 1, 4; ECF No. 108-2 (Response to ECF No. 100-2) ¶¶ 1, 4;[1] ECF No. 102-1 (Tran, Swett, Baker, and Smith's Undisputed Facts) ¶ 3; ECF No. 112-2 (Response to ECF No. 102-1) ¶ 3. The attack was caught on film by C Yard Camera 8, which is located to the right of the C Yard Observation Tower. ECF No. 108-3 (Plaintiff's Disputed Facts, re: Guerra MSJ) ¶ 17;[2] ECF No. 112-3

---

[1] Plaintiff has objected to, but nonetheless admitted, one-third of Guerra's undisputed facts on the ground they rely on his complaint, which is not verified. ECF No. 108-2 ¶¶ 1-4, 8, 11, 13. These objections are meritless. The complaint was signed under penalty of perjury in conformance with 28 U.S.C. § 1746 in two separate places. ECF No. 1 at 3, 15.
[2] Guerra did not respond to the plaintiff's statement of disputed facts and instead asks that it be stricken for noncompliance with Local Rule 260(b). ECF No. 120 at 5-6. Guerra argues that (continued)

(Plaintiff's Disputed Facts, re: Tran, Swett, Baker, and Smith MSJ) ¶ 26; ECF No. 119-2 (Response to ECF No. 112-3) ¶ 26. Based on the timestamps on the video, the attack began at approximately 1:20:56 p.m. and lasted 23 to 24 seconds.[3] ECF No. 102-1 ¶¶ 22-24; ECF No. 112-2 ¶¶ 22-24; ECF No. 108-3 ¶¶ 18, 21. At approximately 1:21:43 p.m., inmates began responding to the "yard recall," and at some point between 1:23:56 p.m. and 1:24:06 p.m., Guerra ordered the "yard down."[4,5] ECF No. 102-1 ¶ 26; ECF No. 112-2 ¶ 26; ECF No. 108-3 ¶¶ 22-23; ECF No. 112-3 ¶¶ 32-33; ECF No. 119-2 ¶¶ 32-33.

B.  Defendant Guerra

On the day of the assault, Guerra was assigned to the Facility C Observation Tower, where it was his duty to maintain a constant visual of the inmates on the exercise yard by conducting "visual sweeps." ECF No. 100-2 ¶¶ 2-3; ECF No. 108-2 ¶¶ 2-3. Plaintiff was attacked approximately 150 feet away from the observation tower, and at the approximate time of the attack, Guerra was observing the right side of the yard, toward the area where the attack occurred. ECF No. 108-3 ¶¶ 10, 12, 16. After announcing "yard recall," Guerra performed a visual scan of the upper half of the yard, observed plaintiff lying on the ground in the fetal position, and then ordered the "yard down." ECF No. 100-2 ¶ 14; ECF No. 108-2 ¶ 14. The parties agree that Guerra observed plaintiff on the ground and ordered the "yard down," but

---

because plaintiff stated in a footnote that some of the facts "are actually indisputable" (ECF No. 108-3 at 1 n.1), he improperly filed a "Statement of Undisputed Facts" instead of a "Statement of Disputed Facts," thus violating the rule. ECF. No. 120 at 5-6. This argument is without merit. In relevant part, Local Rule 260(b) states that "[t]he opposing party may also file a concise 'Statement of Disputed Facts,' and the source thereof in the record, of all additional material facts as to which there is a genuine issue precluding summary judgment or adjudication." Plaintiff's statement includes additional facts for the purpose of establishing genuine issues precluding summary judgment and therefore complies with the Local Rules, even if some of the discrete facts are ultimately undisputed (e.g., the location of Camera 8). Therefore, to the extent the facts are supported by the records cited and are material to deciding the motion, they will be considered.

[3] Any dispute between the parties regarding whether the assault ended at 1:21:19 p.m. or 1:21:20 p.m. is immaterial to deciding the motion.

[4] Any dispute regarding the exact time Guerra ordered the yard down is immaterial to deciding the motion.

[5] A "yard recall" requires the inmates to leave the recreation yard and return to their housing units. ECF No. 100-2 at 4 n.2. A "yard down" order requires the inmates to sit or lay prone on the ground. ECF No. 100-1 at 37 (PL's Depo. 2 at 125:17-22).

dispute at what point Guerra first observed him. ECF No. 100-2 ¶¶ 13-15; ECF No. 108-2 ¶¶ 13-15.

### C. Defendants Tran, Swett, Baker, and Smith

At the time of the assault, Tran, Swett, Baker, and Smith were "on the other side of the yard,"[6] approximately the length of a football field (i.e., 100 yards) away from plaintiff. ECF No. 102-1 ¶¶ 12-13; ECF No. 112-2 ¶¶ 12-13. Shortly after yard recall, Tran, Swett, Baker, and Smith began walking up the track toward the vehicle gate, and at approximately 1:23:56 p.m. they began running up the track toward plaintiff. ECF No. 102-1 ¶¶ 25, 27; ECF No. 112-2 ¶¶ 25, 27.

## VII. Discussion

The parties are largely in agreement as to the events and timeline, with the disputes centering primarily on whether any of the defendants saw the attack on plaintiff taking place.

### A. Circumstantial Evidence

In support of their motions for summary judgment, all defendants rely upon their own sworn statements that they did not see the assault, and Tran, Swett, Baker, and Smith further rely on plaintiff's deposition testimony regarding visibility on the yard. ECF No. 100-2 ¶¶ 14-15; ECF No. 102-1 ¶¶ 12-21. Plaintiff, on the other hand, argues that defendants witnessed the attack and relies on circumstantial evidence to discredit defendants' statements to the contrary. ECF No. 112 at 14-17.

"[The court] must also look at the circumstantial evidence that, if believed, would tend to discredit the [defendant's] story." Scott v. Henrich, 39 F.3d 912, 915 (9th Cir. 1994). "[T]he requisite knowledge of a substantial risk" can be inferred from circumstantial evidence, "and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Farmer, 511 U.S. at 842 (citations omitted). The court must therefore consider whether circumstantial evidence could convince a rational factfinder that the defendant was aware of the risk. See id.; Scott, 39 F.3d at 915. Video footage of an incident may create an issue of fact as to whether an official was aware of the incident. See Castro v. County of Los

---

[6] Plaintiff objects to the use of the phrase "opposite side of the yard," but he testified that "[a]ll the COs were on the other side of the yard." ECF No. 102-2 at 17 (PL's Depo. 1 at 69:16-17).

Angeles, 833 F.3d 1060, 1072 (9th Cir. 2016) (en banc) (jury verdict in plaintiff's favor sustained where evidence included video of plaintiff "pounding on his cell door for a full minute, while [defendant] remained unresponsive, seated at a desk nearby").

    B.   <u>Defendant Guerra</u>

  Guerra asserts that he did not see the attack, and that he did not see plaintiff bleeding on the ground until he issued the "yard down" order. ECF No. 100 at 6-8; ECF No. 100-2 ¶¶ 14-15. Plaintiff disputes Guerra's claim, relying on circumstantial evidence such as the proximity of the tower to the attack, the conspicuous actions involved in the attack, the noticeable scene that the attack caused, the fact that plaintiff yelled for help during the assault, and Guerra's testimony that he was looking in the general direction of the attack when it occurred. ECF No. 108 at 9-10, 12; ECF No. 108-2 ¶¶ 12, 15.

  Plaintiff argues that circumstantial evidence shows that Guerra heard the attack and ignored it. ECF No. 108 at 10. Plaintiff contends that he yelled several times and that Guerra testified that he could hear inmates yelling up to him in the tower. ECF No. 108-3 ¶¶ 13-15. While Guerra did testify that he "could hear noise . . . the noise of the rec yard," could hear inmates under the tower yelling up to him, and could hear a closer inmate better than a farther one," (ECF No. 108-1 at 25-27 (Guerra Depo. at 68:20-69:4, 75:5-18)), when asked specifically whether he could hear inmates in the location where plaintiff was lying after the assault, Guerra responded "No. You won't be able to hear too—too good that far away," (Guerra Depo. at 83:4-12). There is no other evidence showing that Guerra could have heard plaintiff from the location of the assault. Accordingly, plaintiff has not identified a triable issue of fact regarding Guerra's knowledge of the attack based solely on his ability to hear plaintiff's cries.

  More successfully, plaintiff argues that the circumstantial evidence shows that Guerra saw the attack and ignored it. ECF No. 108 at 9-10. The attack in this case lasted approximately twenty-four seconds, and Guerra did not call the yard down until roughly two and a half to three minutes after the attack ended. Plaintiff has submitted video from Camera 8, which captured footage of the assault (Exhibit 4 to ECF No. 108-1), and evidence that the camera was just to the right of Guerra's location (ECF No. 108-3 ¶ 17). The footage shows other inmates who were

recreating on the yard conspicuously leaving the immediate vicinity of the attack, leaving an unobstructed view of the assault. Camera 8 footage at 1:21:02 p.m. to 1:21:19 p.m. It also shows that after the assault, plaintiff remained sitting upright for about one minute before falling over onto his side (id. at 1:21:19 p.m. to 1:22:15 p.m.), where he lay alone on the ground in open view and clearly visible for over a minute and a half before other inmates on the yard began sitting in response to the yard down order (id. at 1:22:15 p.m. to 1:23:56 p.m.). Despite the brief duration of the assault, given its clear visibility and the length of time plaintiff was lying on the ground in plain view afterward, the circumstantial evidence is sufficient to discredit Guerra's story. A reasonable jury watching the footage could find that the attack was so visibly obvious from Guerra's position that his denial of seeing it should not be credited. Because this evidence goes directly to the credibility of Guerra's testimony that he did not witness the assault and is sufficient to allow a reasonable jury to discredit Guerra's testimony to that effect, it creates an issue of material fact that precludes summary judgment.

To the extent plaintiff seeks to further attack Guerra's credibility by arguing that Guerra lied when he testified that he was not disciplined in relation to the assault because he in fact received a Notice of Adverse Action (NOAA)[7] (ECF No. 108 at 11), this general attack on Guerra's credibility is not appropriate on summary judgment, see Crawford-El v. Britton, 523 U.S. 574, 600 (1998) (at the summary-judgment stage, "the plaintiff may not respond simply with general attacks upon the defendant's credibility, but rather must identify affirmative evidence from which a jury could find that the plaintiff has carried his or her burden of proving the

---

[7] Plaintiff identifies the NOAA as an "Official Reprimand and form of discipline." ECF No. 108 at 5. However, according to the Department Operations Manual, of which plaintiff requests the court take judicial notice (ECF No. 110), a NOAA is a notice "to the affected employee of the charges against him/her, the adverse action penalty, and the effective date" (id. at 11). Presumably, plaintiff means that Guerra received a letter of reprimand, which is "the lowest level of penalty in the adverse action process," and that the NOAA advised him of the reprimand. Id. at 16. With respect to the request for judicial notice, although plaintiff does not produce a copy of the historical Department Operations Manual for the relevant time period, because the manual indicates that the relevant sections have not been updated since they were effected in 2006 and the manual is a public record, the request will be granted. See Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006) (court may take notice of matters of public record).

1  pertinent motive"). Although plaintiff argues that Guerra was disciplined for failing to intervene,
2  the evidence cited does not identify the grounds for the discipline other than to indicate it was
3  "related to the subject incident." ECF No. 108-1 at 57. Absent facts demonstrating that the
4  discipline was in fact related to Guerra's failure to intervene (as opposed to, for example, his
5  response upon discovering plaintiff lying in the yard), that Guerra was disciplined and then lied
6  about it is no more than a general attack on his credibility.

        C.      Defendants Tran, Swett, Baker, and Smith

8  Defendants Tran, Swett, Baker, and Smith similarly assert that they did not see plaintiff
9  being assaulted and argue that plaintiff does not have evidence to show that any of them actually
10 witnessed the attack. ECF No. 102 at 10-11. Plaintiff argues that these defendants also saw the
11 attack and once again supports his claim with circumstantial evidence such as the proximity of the
12 tower to the attack, the conspicuous actions involved in the attack, the noticeable scene that the
13 attack caused, and his assertion that defendants looked in his direction when he yelled for help
14 during the assault. ECF No. 112 at 14-17. He also asserts that the attack was "open and
15 obvious," as evinced by the conduct of inmates on the far side of the yard who "stopped what
16 they were doing and focused their attention toward the attack . . . for several seconds." Id. at 14.

17 Plaintiff's circumstantial evidence is based largely upon the alleged visibility of the attack
18 and his claim that he saw defendants looking in his direction during the attack. However, as the
19 defendants note, "Plaintiff was absolutely clear in his June 1, 2021 deposition that the Yard
20 Officers could not have seen the attack on Plaintiff." ECF No. 119 at 3.

21 During his first deposition, which took place on June 1, 2021, plaintiff testified numerous
22 times regarding the poor visibility from defendants' location and that he did not think that officers
23 on the yard saw the attack. ECF No. 102-2 at 17, 18 (Beltran Depo. 1 at 69:3-24 (testifying that
24 "facility has lot of blind spots," all the officers were "all positioned in one area, which was not
25 accessible . . . really far away," "[a]ll the COs were on the other side of the yard" and "couldn't
26 even see that area where [the assault] happened at"), 75:4-9 (affirming it would have been "nearly

1  impossible" for the yard officers to see him at the time of the attack)).[8]  It wasn't until plaintiff's
2  second deposition on August 17, 2022, that he testified that he saw officers "just standing on the
3  other side of the yard."  ECF No. 112-1 at 14 (Beltran Depo. 2 at 137:16-20).  He also testified
4  that after the assault ended, he saw them looking up in his direction, though he couldn't say
5  whether they were looking at him or not, and that he knew "that the COs were down there and
6  looking the same direction" prior to the assault.  Id. at 20 (Beltran Depo. 2 at 149:5-16).

       Furthermore, while plaintiff testified at his original deposition that right before he was stabbed he could see Cross, who he believed to be with the other yard officers, he also stated that he "could hardly see him.  He was—he was real far away" and he was unable to tell whether Cross was facing his direction because of the distance.  ECF No. 102-2 at 17 (Beltran Depo. 1 at 69:18-20).  This appears to contradict his testimony in his second deposition that after the assault ended he could see officers on the yard well enough to tell both that they were facing him and looking in his general direction, though he admitted that he could not tell if they were looking straight at him.  ECF No. 112-1 at 20 (Beltran Depo. 2 at 149:5-14).

       The video evidence also appears to contradict plaintiff's testimony that he saw officers after the assault was over when he got to an almost standing position.  Id. at 17 (Beltran Depo. 2 at 145:1-13).  It is clear from the video that while plaintiff was sitting up for a period of time after the assault, and attempted to get back up a couple of times after collapsing on the ground, he did not, at any time after the assault, get to a near standing position.  Camera 8 footage (Exhibit I to ECF No. 102-2) starting at 1:21:19 p.m.  From the video it further appears that while plaintiff was sitting up, he was looking out toward the lower basketball court seen in the foreground of the

---

[8] Additional testimony from plaintiff's lodged deposition transcript reiterates the lack of visibility or availability of officers on the yard.  See Beltran Depo. 1 at 72:18-24 (agreeing that officers on the yard "would not have been able to see [him] being stabbed), 73:16-19 ("All the officers that day were all gathered on the other side of the yard.  That makes it basically impossible for them to . . . see where [he] was at or what was happening."), 74:4-5 ("[t]here was no one for [him] to get help from").

11

1  footage from Camera 4[9] (Exhibit H to ECF No. 102-2), not toward defendants[10] (Camera 8
2  footage starting at 1:21:19 p.m.), and plaintiff testified that while he was lying on the ground, he
3  could not see any officers (Beltran Depo. 2 at 147:13-20).
4        As addressed above, there appears to be a significant discrepancy between plaintiff's
5  testimony in his first and second depositions, and defendants urge the court to disregard the
6  apparently contradictory later testimony. ECF No. 119 at 3-4. While plaintiff does make some
7  attempts to address the discrepancies, they are ultimately unavailing. Plaintiff first objects to
8  consideration of his own original testimony regarding visibility on the yard on the ground that he
9  lacks personal knowledge of what defendants could see. ECF No. 112 at 16-17. However, this
10 objection cuts equally against his argument that defendants saw him because he saw them, and
11 fails to address plaintiff's ability to testify to visibility on the yard generally or the discrepancies
12 in his statements regarding what he saw.
13       Plaintiff next attempts to distinguish his testimony regarding the lack of visibility by
14 asserting that his comment about blind spots was taken out of context and pertained to defendant
15 Cross's location only. ECF No. 112 at 17. However, as defendants point out, plaintiff's
16 deposition testimony makes clear that while plaintiff was originally talking about Cross, who he
17 mistakenly believed was on the yard, he expanded his response to include all the officers on the
18 yard. ECF No. 119 at 3-4 (quoting Beltran Depo. 1 at 69:2-11); see also ECF No. 102-2 at 17
19 (Beltran Depo. 1 at 69:12-24).
20       Despite the discrepancies in plaintiff's testimony and his failure to adequately explain
21 them, it appears that the testimony that he saw officers after the assault is reconcilable with his

---

[9] The video footage shows that there were two basketball courts on the yard. The basketball court at the foreground of the video from Camera 4, which is lower on the yard than the location of the assault, and a second basketball court seen in the center background of the video from Camera 8 on the upper part of the yard next to where plaintiff was assaulted. The basketball court in the foreground of Camera 4 can also be seen in the left background of the video from Camera 8.

[10] In the footage from Camera 4 beginning at approximately 1:23:20 p.m., defendants can be seen on the right side of the frame beginning to walk up the track from where it appears they were standing in front of the building with the line of windows toward the top. Exhibit H to ECF No. 102-2. They can then be seen beginning to run up the track at approximately 1:23:56 p.m. Id.; ECF No. 102-1 ¶ 27; ECF No. 112-2 ¶ 27.

previous testimony that he could not see the officers on the lower part of the yard where defendants were located. Plaintiff testified that he could not identify which officers he saw after the attack, just that they were on the "lower side of the yard." ECF No. 112-1 at 17 (Beltran Depo. 2 at 145:7-13). Footage from Camera 8 shows that at approximately 1:24:03 p.m., when inmates began sitting on the ground in response to the yard down, two officers began running toward plaintiff's location from behind the lower basketball court shown in the foreground of Camera 4's footage and in the same direction plaintiff appears to be looking after the assault. It is therefore possible that plaintiff saw officers after the assault, just not defendants.[11] Assuming this to be the case, plaintiff's testimony is not necessarily contradictory, but it also fails to create a triable issue of fact as to whether Tran, Swett, Baker, and Smith saw the assault.

Plaintiff also argues that Tran, Swett, Baker, and Smith's testimony that they were not aware of the assault as it was taking place is contradicted by the fact that he yelled for help multiple times during the assault and saw them looking in his direction when he yelled. ECF No. 112 at 14-15. However, plaintiff's deposition testimony is that he saw unidentified officers after the assault, and there is no testimony that he saw defendants looking at him during the assault. ECF No. 112-1 at 12-15, 17-18, 20 (Beltran Depo. 2 at 134:21-135:7 (yelling in "the direction of where the COs normally are at"), 137:16-138:4 (saw officers when trying to get up after assault), 145:3-146:20 (discussing seeing officers after end of assault), 149:5-16 (officers looking in his direction after assault and stating he knew officers were in same location and looking in his direction before the assault without further elaboration)).[12] Moreover, even if the court assumes plaintiff was yelling, he has not presented any evidence that the defendants could hear him from approximately 100 yards away during recreation time when the video evidence shows at least 100 inmates on the yard and plaintiff sustained multiple stab wounds to the chest that resulted in both lungs collapsing. See ECF No. 1 at 6, 9-10; Beltran Depo. 1 at 24:21-23 (testifying about injuries).

---

[11] It is undisputed that defendants Tran, Swett, Baker, and Smith were the officers seen running up the track in video from Camera 4. ECF No. 102-1 ¶¶ 25, 27; ECF No. 112-2 ¶¶ 25, 27.
[12] Additional testimony from plaintiff's confirms that the assault was over by the time he saw officers. See Beltran Depo. 2 at 147:10-12.

13

Plaintiff's final piece of circumstantial evidence, that the attack was seen by numerous inmates across the yard, is purely speculative. Although inmates in the immediate vicinity of the assault clearly scattered, it is not clear that the inmates seen on the basketball court in the foreground of the video from Camera 4 were looking at the assault. Camera 4 footage at 1:21:08 p.m. to 1:21:20 p.m. Even if the court assumes the inmates were watching the assault, there is no evidence as to how their ability to see or hear the assault from that distance and angle compares to that of defendants. Moreover, plaintiff claims that the attack consisted of "eye-catching movements," but there is no evidence as to what was visible to defendants from their location, other than plaintiff's claims of poor visibility addressed above. Camera 8 shows obvious movement by inmates attempting to move away from the assault (Camera 8 footage at 1:21:02 p.m. to 1:21:19 p.m.), but Cameras 4 and 7 (Exhibit 14 to ECF No. 112-1) show much less obvious movement.

For the reasons addressed above, the circumstantial evidence relied on by plaintiff does not tend to discredit Tran, Swett, Baker, and Smith's claims that they did not witness the attack and would not allow a reasonable jury to find that these defendants saw the assault. See Scott, 39 F.3d at 915. Because there is no evidence that Tran, Swett, Baker, and Smith saw plaintiff being assaulted, plaintiff cannot establish that they had an opportunity to intervene. Accordingly, plaintiff cannot prove that they were aware of a substantial risk of serious harm and ignored it. These defendants are therefore entitled to summary judgment.

### D. Qualified Immunity

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) (citations omitted). In analyzing a qualified immunity defense, the court must consider the following: (1) whether the alleged facts, taken in the light most favorable to the plaintiff, demonstrate that defendant's conduct violated a statutory or constitutional right; and (2) whether the right at issue was clearly established at the time of the incident. Saucier v. Katz, 533 U.S. 194, 201 (2001), overruled in part by Pearson v. Callahan, 555 U.S. 223, 236 (2009)

(overruling Saucier's requirement that the two prongs be decided sequentially).

As discussed above, there is an issue of material fact with respect to defendant Guerra as to whether he saw the attack on plaintiff and ignored it. If Guerra saw the attack and ignored it, then his conduct would have violated plaintiff's Eighth Amendment right and the unlawfulness of watching an inmate being attacked and doing nothing was clearly established at the time. See Farmer, 511 U.S. at 832-34. This disputed fact therefore precludes qualified immunity for defendant Guerra. With respect to defendants Tran, Swett, Baker, and Smith, because the facts taken in the light most favorable to plaintiff do not show the violation of a constitutional right, it is not necessary for the court to address their qualified immunity argument.

VIII.   Conclusion

For the reasons set forth above, defendant Guerra's motion for summary judgment should be denied and defendants Cross, Tran, Swett, Baker, and Smith's motion for summary judgment should be granted. All claims against defendant Cross should further be dismissed because the parties agree that he should be dismissed from this action.

Accordingly, IT IS HEREBY ORDERED that plaintiff's request for judicial notice (ECF No. 110) is GRANTED.

IT IS FURTHER RECOMMENDED that:

1. Defendant Guerra's motion for summary judgment (ECF No. 100) be DENIED;

2. Defendants Cross, Tran, Swett, Baker, and Smith's motion for summary judgment (ECF No. 102) be GRANTED; and

3. Defendants Cross, Tran, Swett, Baker, and Smith be dismissed and this action proceed against defendant Guerra only.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be served and filed within fourteen days after service of the objections. The

1 | parties are advised that failure to file objections within the specified time may waive the right to
2 | appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).
3 | DATED: March 13, 2023

/s/ Allison Claire
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE